# FRANCIS M. HARRELL

*v.*

# THE ENTERPRISE SAVINGS BANK.

*Opinion filed December 18, 1899—Rehearing denied February 8, 1900.*

1. EJECTMENT—*when plaintiff is prima facie authorized to recover.* In an action of ejectment, proof of prior possession, under claim of ownership in fee, by the grantor or others under whom he claims or with whose title he is in privity, is *prima facie* evidence of ownership and seizin sufficient to authorize a recovery, unless the defendant shows a better title.

2. SAME—*a purchaser in possession under a performed written contract may defend against vendor's title.* A purchaser of land in possession under a written contract which he has fully performed may defend against the title of the vendor.

3. EVIDENCE—*when secondary evidence of execution and contents of a deed is authorized.* Secondary evidence of the execution and contents of a deed is authorized by testimony that the deed had never been in the possession of the party claiming under it, that it was not of record in the county, and that the books in which it would have probably been recorded were destroyed by fire.

4. SAME—*when copy of sale entries and receipt are proper secondary evidence of execution of deed.* The letter-press copy of a receipt and entries made in books of account by trustees in the regular course of their business and against their interest, showing the sale of certain trust property, are competent secondary evidence tending to show the execution and delivery of a deed by them.

5. SAME—*evidence necessary to establish contents of lost deed.* In proving the contents of a lost deed it is sufficient to show by whom and to whom the deed was executed, about what time it was made, the consideration therefor and the property conveyed.

6. SAME—*statement in book of account that land was "conveyed" implies execution of deed.* A statement in books of account that property was "conveyed" will be construed to mean the execution and delivery of a deed, especially where the giving of a mortgage to secure unpaid purchase money is recited.

7. STARE DECISIS—*courts are reluctant to depart from long followed property rules.* Courts are disposed to adhere to a rule of law long followed and on which property rights are based.

8. TAX DEEDS—*notice of expiration of redemption should say whether sale was for taxes or assessments.* The notice of the expiration of the right to redeem from a sale for taxes and special assessments is insufficient to base a tax deed upon, when it fails to show whether the particular property was sold for taxes or special assessments.

9. SAME—*notice of expiration of redemption should state year of taxes and year of special assessments unpaid.* A notice of the expiration of the time of redemption from a sale for both taxes and special assessments should specify for what year the property was taxed and for what year the special assessments were made.

10. SAME—*taxes and assessments are not presumed to have been made against same person.* An affidavit for a tax deed on a sale for both taxes and special assessments is not sufficient when it fails to show in whose name the lots were specially assessed, or that notice of the expiration of the right of redemption from the sale was served upon such person, although the name of the person against whom the lots were *taxed* is stated.

11. COLOR OF TITLE—*certificate of purchase is not color of title, nor does tax deed relate back.* A certificate of purchase issued on a tax sale does not constitute color of title, and a tax deed subsequently issued on such certificate of purchase will not relate back, so as to constitute color of title existing before actual execution of deed.

12. LIMITATIONS—*period between date of tax deed and issue of certificate of purchase cannot be counted.* A defense based on a tax deed as color of title and payment of taxes for seven years cannot be made unless such period has intervened between the date of the execution of the tax deed and the day on which suit was brought.

APPEAL from the Circuit Court of Alexander county; the Hon. JOSEPH P. ROBARTS, Judge, presiding.

Appellant commenced an action of ejectment to recover lots 6, 9, 10 and 11, in block 40, in the city of Cairo. Appellee filed a plea of the general issue, and on trial the finding and judgment were entered for the defendant, and the plaintiff prosecutes this appeal. At the same time, an ejectment suit was pending and heard as to lots 7 and 8, in the same block, which were held under the same character of paper title, and in the latter case the finding and judgment were entered for the plaintiff and a new trial taken under the statute.

The appellant asked the court to hold that the trustees sold and conveyed the lots to John Ivers on or about May 7, 1855, and the court struck out the word "conveyed" and held the proposition. The court was further asked to hold that the evidence further showed that the deed to Ivers had been lost and appellant was authorized to

introduce secondary evidence of its contents, which was refused. To the modification and refusal of these propositions appellant excepted. The court held the tax deed was null and void, for the reason that the notice of the expiration of the time of redemption and the affidavit of compliance are each insufficient, to which appellee excepted. Numerous other errors and cross-errors are assigned, to which reference will be made in the discussion of the facts appearing on the record.

LANSDEN & LEEK, for appellant.

GREEN & GILBERT, for appellee:

The contention that neither affidavit nor notice shows what the property was sold for,—a tax or special assessment,—cannot be sustained. The exhibit made part of the affidavit shows that the property was sold for both "taxes and special assessments." Section 216 of the Revenue law did not require that any such information should be stated in the notice. Rev. Stat. chap. 120, secs. 58, 191, 216, 217, 224; chap. 24, art. 4, sec. 26; *Frew* v. *Taylor*, 106 Ill. 166; *Taylor* v. *Wright*, 121 id. 464.

Where the owner appears and files objections, and there is a hearing of the same on the merits, the correctness of all that is not objected to is admitted, and the judgment is conclusive and cannot be collaterally attacked by the objector and his grantee and privies in estate. *Frew* v. *Taylor*, 106 Ill. 159; *Neff* v. *Smyth*, 111 id. 101; *Warren* v. *Cook*, 116 id. 199; *Graceland Cemetery Co.* v. *People*, 92 id. 619; *Mix* v. *People*, 116 id. 267; *Smyth* v. *Neff*, 123 id. 310; *Belleville Nail Co.* v. *People*, 98 id. 399; *Karnes* v. *People*, 73 id. 274; *Gage* v. *Bailey*, 102 id. 11; *Moore* v. *Wayman*, 107 id. 193.

Possession, to authorize the presumption as to corporeal rights, must be adverse,—not permissive,—and must exist for the full limitation period. *Trustees* v. *Mutze*, 31 S. C. 52.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Where there is proof of prior possession by the grantor, or others under whom he claims and to whose title he is privy, and he or those under whom he holds claim to be the owners of the fee, the law is well settled that in an action of ejectment such proof of prior possession is *prima facie* evidence of ownership and seizin sufficient to authorize a recovery, unless the defendant shows a better title. *Barger* v. *Hobbs*, 67 Ill. 592; *Benefield* v. *Albert*, 132 id. 665.

The evidence shows that the Cairo City and Canal Company, on the thirteenth day of June, 1846, duly conveyed fractional section 25, in township 17, south, range 1, west of the third principal meridian, to Thomas S. Taylor, of the city of Philadelphia, and Charles Davis, of the city of New York, and to the survivor of them, and to the heirs and assigns of such survivor forever, with other lands in the deed described. The said Taylor and Davis, on the twenty-ninth day of September, 1846, executed a declaration in trust, stating that the beneficial interest in the lands in the deed mentioned should be divided into 35,000 shares, for which certificates were to be issued by them, declaring that they and the survivor of them, and their successors, should have the management and control of the real estate and the proceeds thereof; that they shall pay the taxes thereon when in funds, and the expenses incident to the creation and execution of the said trust declared by them; that they should make such contracts, and such purchases and sales of real and personal estate, as they deem necessary and expedient to promote the interest of the shareholders. The real estate is declared to be the "Cairo city property" and Taylor and Davis are designated "trustees of the Cairo city property." The said Taylor and Davis in 1853 caused a portion of the land to be surveyed into blocks, lots, streets, avenues, etc., by the county surveyor of Alexander county, and said survey and plat were duly certified

to by said county surveyor and acknowledged by said
Taylor and Davis, and the same filed for record in the
office of the recorder of deeds of Alexander county. The
lots in controversy are a part of the lots so conveyed by
the Cairo City and Canal Company to the said Taylor
and Davis and platted as above.

When the land above platted was conveyed to Taylor
and Davis it had a forest growth thereon, which was by
them cleared up. The evidence discloses that they were
in possession of the land so conveyed and so platted.
Books were kept by them showing what lots were sold,
the payments made thereon and to whom sold, and from
these books it appears that on May 7, 1855, for the con-
sideration of $1500, lots 6, 7, 8, 9, 10 and 11, of block 40,
were conveyed to John Ivers, Jr., and the books further
show that the same was paid in full October 16, 1858.
The said John Ivers entered into possession of the said
lots, had certain improvements made on two or more of
them, and paid taxes thereon, in person or through his
agent, until his death, which occurred January 12, 1885.
No original deed was produced, no witness was called
who ever saw such original deed, and no record of such
deed is found to be in existence. The evidence discloses
certain records were destroyed by the burning of the
court house of Alexander county between the years of
1852 and 1860, and it is further shown that deeds made
about the time of the alleged sale of the lots to John
Ivers, Jr., were recorded in such records so destroyed.

One S. S. Taylor was for many years the agent of the
said Taylor and Davis, who platted said property, and
also acted as the agent of John Ivers, Jr., in and about
keeping up repairs and the payment of taxes on said lots
where they were improved. The fact that the agent of
the trustees so acted as the agent of John Ivers furnishes
proof of his recognition of the ownership being in the
said Ivers, and that fact, with the recitals in the books
of the trustees that the said lots were conveyed to John

Ivers, together with a copy of the deeds as then used by the said trustees, are the chief evidence on which the plaintiff relies as showing the execution and delivery of a deed conveying the lots in question to the said Ivers, together with the evidence shown by the books that he had paid in full for them.

The evidence of the plaintiff shows that the deed conveying the property from the trustees to John Ivers had never been in his possession and that it was not in his power to produce the same; that he had not disposed of the same for the purpose of introducing secondary evidence of its contents. It appears from the evidence of the administrator and of the devisee under his will that the deed had never been in their possession and that they had never seen the same, and had made diligent search among all the papers of the deceased and were unable to find it. This is sufficient to authorize secondary evidence of the contents of such deed. (*Gillespie* v. *Gillespie,* 159 Ill. 84.) It being further shown by the evidence that two witnesses who were familiar with the public records of Alexander county, and who testified they had made careful search of such records for the purpose of trying to find said deed and that the same was not of record in said county, and the testimony further showing that the record books in which said deed would have probably been recorded had been destroyed by fire, it was competent for appellant to prove the execution and contents of said deed by the best evidence of which the nature of the case was susceptible. *Bestor* v. *Powell,* 2 Gilm. 119; *Dugger* v. *Oglesby,* 99 Ill. 405; *Tucker* v. *Shaw,* 158 id. 326.

Appellant sought to make that proof by offering in evidence the letter-press copy of the receipt found in letter book 4 of Taylor and Davis, trustees of the Cairo city property, dated May 7, 1855, executed by said Taylor and Davis, by S. Staats Taylor, their agent and attorney in fact, to John Ivers, Jr., acknowledging the receipt from the latter of the sum of $375 on account of

lots 6, 7, 8, 9, 10 and 11, in block 40, city of Cairo, and stating that said lots had been sold to the said John Ivers for $1500, and that he was to execute a bond and mortgage for the balance of the purchase money of said lots when the deed for the same was delivered to him, which was to be done as soon as the same could be obtained from Philadelphia in due course of mail. It was also shown by "No. 1 Sales Ledger" of said Taylor and Davis, trustees, (the itemized account of John Ivers with reference to the purchase and payment for said lots,) that the sale of the same was No. 125; that the purchase price thereof was $1500; that the date of sale of said lots was May 7, 1855; that the payment of the unpaid purchase money was secured by mortgage, and the last payment due was paid in full October 16, 1858. It was shown by another book of said trustees, entitled "Plats, Vol. 1, Cairo City Property," that said lots were conveyed to John Ivers May 7, 1855; that said sale was No. 125, and that said lots were paid for in full October 15, 1858. All this was competent evidence tending to support plaintiff's claim of the execution and delivery of a deed by the trustees to John Ivers. Such books and entries are written declarations made by the trustees in the regular course of their business and against their interest. *Chicago and Northwestern Railway Co.* v. *Ingersoll,* 65 Ill. 399.

In seeking to prove the contents of a lost deed it is sufficient to prove by whom and to whom the deed was executed, about what time it was so executed, and the consideration paid therefor and the property conveyed. (*Perry* v. *Burton,* 111 Ill. 138.) The term "conveyed," as used on the books of the trustees, having reference to a transaction in regard to real estate sold, which was referred to in the receipt for the first payment, necessarily authorizes the construction of the term "conveyed," as used in the books of the trustees, to mean the execution and delivery of a deed. The fact of the trustees taking a mortgage thereafter to secure the payment of the pur-

chase money sustains this construction of the term "conveyed."

With such proof of the transaction between Ivers and the trustees, we are disposed to hold that it sufficiently shows the execution and delivery of a deed from the trustees to Ivers, and this evidence that a deed was executed and delivered, with the probability that it was lost or mislaid, as shown by the destruction of certain records, and the search that was made for it, was sufficient to authorize the introduction of secondary evidence of its contents. (*Kelsy* v. *Hanmer*, 18 Conn. 311; *Boulden* v. *Massie*, 7 Wheat. 122.) We hold, therefore, that this secondary evidence sufficiently shows the execution and delivery of a deed from the trustees to the said John Ivers, Jr.

The evidence shows that John Ivers died leaving a will, wherein the lots in controversy were devised to Fannie E. Harlan, who conveyed said lots to S. Staats Taylor, who re-conveyed the same to her, and she afterwards sold and conveyed the lots to F. M. Atherton, who, on the twentieth day of September, 1896, conveyed all of said lots to the appellant. These conveyances show a clear and connected title in the plaintiff (appellant) from the trustees of the Cairo city property, who were shown to be in the actual possession of the same at the time of the conveyance from them.

The evidence shows that Taylor and Davis, the trustees, were in possession of the land from 1846 to 1853, under color of title, exercising acts of ownership over the lots in question; that they had cleared the land, laid it out into lots, blocks, streets and avenues, and sold the same for a valuable consideration to John Ivers, and that he paid for the same in full, making his final payment in 1858, and that he entered into possession of said lots, and that improvements were made on three of them by or through his direction. Ivers was in the lawful possession thereof, and such possession continued up to the time of his death, during all of which time he paid the

taxes on said lots. Such possession was lawful, and he can hold the same in any action of ejectment that might be brought by such trustees, or any purchaser under them, as a vendee in possession under a written contract which he had fully performed, and may defend against the title of the vendor. *Sands* v. *Kagey*, 150 Ill. 109; *Fleming* v. *Carter*, 70 id. 286.

The defendant, the appellee, in defense of its right of possession and title, introduced in evidence the affidavit and notice on which a tax deed was based for the sale of these lots for taxes and special assessments, which deed was made April 24, 1890. The affidavit and notices on which the deed was based were made by Thomas W. Halliday, the purchaser at the tax sale, and who obtained such tax deed. The notice was as follows:

"To F. E. Harman, F. C. Harlan, S. S. Taylor, and the unknown heirs of John Ivers and John Ivers, Jr., and all other parties interested:

"You are hereby notified that at a sale of real estate in the county of Alexander and State of Illinois, held by the county collector of said county at the south-westerly door of the court house, in the city of Cairo, in said county and State, on the twenty-fifth day of June, 1887, for the taxes and special assessments for the year 1886 due and unpaid thereon, together with penalties and costs, the undersigned purchased the real estate hereinafter. described, situated in the city of Cairo, in said county and State, taxed at the time of sale in the name of S. S. Taylor, now taxed in the name of F. C. Harlan, to-wit: Lots numbered six (6), seven (7), eight (8), nine (9), ten (10) and eleven (11), in block numbered forty (40), in said city of Cairo, Illinois, and that the time allowed by law for the redemption of said sale of real estate will expire on the twenty-fifth day of June, 1889.             THOMAS W. HALLIDAY, *Purchaser.*
CAIRO, ILLINOIS, *March 11, 1889.*"

This notice shows that the sale at which the lots were purchased was the sale which the collector of the county held for the purpose of selling real estate pursuant to the order and judgment of the county court directing the sale of lands and lots in the county delinquent for unpaid

taxes and special assessments. The notice fails to show whether the particular lots were sold for taxes or special assessments or for both taxes and special assessments, but merely states that at the sale of real estate of the county delinquent for taxes and special assessments the undersigned purchased the lots. This notice fails to show whether the sale was for taxes or special assessments, but merely states that at a sale for taxes and special assessments, together with penalties and costs, the undersigned purchased the real estate, etc. A notice almost identical in character with this was held insufficient in *Gage* v. *Davis*, 129 Ill. 236, and in that case reference was made to *Gage* v. *Waterman*, 121 Ill. 115, and *Stillwell* v. *Brammell*, 124 id. 338, as sustaining the same principle. These cases are conclusive as to the insufficiency of this notice on which to base a tax deed.

Appellee urges that the rule announced in the foregoing cases should be reconsidered and those cases overruled. The principle announced in those cases has been adhered to for such length of time as a rule on which property rights are based that we are disposed to adhere to the rule there announced.

The notice is insufficient for another reason. Where real estate is sold for a tax it has been held that the notice of the expiration of the right of redemption must state for what year the particular real estate sold was taxed, or if the sale was for a special assessment, the notice must state for what year the particular real estate sold was specially assessed. (*Gage* v. *Waterman*, *supra*; *Taylor* v. *Wright*, 121 Ill. 455; *Stillwell* v. *Brammell*, *supra*; *Gage* v. *Davis*, *supra*; *Brophy* v. *Harding*, 137 Ill. 621; *Gage* v. *DuPuy*, 137 id. 652; *Gage* v. *Webb*, 141 id. 533; *Gage* v. *Bani*, 141 U. S. 344.) Under these authorities, the foregoing being the rule of this court, it would follow that where real estate is sold for both a tax and a special assessment the notice must state for what year the same was taxed and for what year the special assessment was

made, as the principle on which the foregoing cases have been decided is, that the owner of the lots is entitled to know, from the notice, for what year the lots were taxed and for what year specially assessed.

The affidavit for the tax deed was not sufficient to authorize the execution of the deed, aside from the defects already pointed out in the notice itself. The affidavit for the tax deed shows that the lots were sold for both taxes and special assessments due thereon for the year 1886, but it nowhere appears from said affidavit in whose name the lots were specially assessed, nor does it appear from the affidavit that any notice of the expiration of the right of redemption from the tax sale was served upon any person in whose name the said lots were specially assessed. The affidavit only states the name of S. Staats Taylor, the name of the person in whose name they were taxed at the time of the sale. It cannot be assumed that the lots were specially assessed in the name of S. S. Taylor because it is alleged in the affidavit that they were taxed in his name. *Gage* v. *Webb, supra.*

Appellee insists that it has been in possession under color of title and payment of taxes for a period more than seven years. Appellee's tax deed was made on April 24, 1890, and this action was commenced in November, 1896, and a plea of not guilty filed February 10, 1897. Seven years had not elapsed from the date of the execution of the deed until the commencement of this suit.

Appellee, however, contends, that inasmuch as Halliday was entitled to a deed June 25, 1889, the color of title existed from that time, and that the deed subsequently delivered had relation back to the time appellee's grantor became entitled, by virtue of the certificate of purchase, to a deed. A certificate of purchase issued on a tax sale does not constitute color of title, and a tax deed subsequently issued on such certificate of purchase will not relate back so as to constitute color of title existing before the actual execution of the deed. (*Dunlap* v.

*Daugherty,* 20 Ill. 398; *Bride* v. *Watt,* 23 id. 507.) Seven years must intervene between the date of the execution of the deed and the day on which suit was brought, before a defense can be made based on color of title. (*Smith* v. *Prall,* 133 Ill. 308.) Appellee filed a bill to declare a resulting trust in Halliday and to procure a conveyance of these lots to himself, on which a decree was entered and a conveyance made accordingly.

Appellee further contends that the possession of the lots was turned over to Halliday by the agent of the appellant because of his purchase. We find no such evidence in the record. The evidence discloses the fact that for a few years prior to 1889 the lots were assessed in the name of S. Staats Taylor, and for a brief time he held the title thereto, but shortly after he acquired the title from Fannie E. Harlan he re-conveyed the lots to her and acted as her agent for the payment of taxes and collecting rents. After the lots had been purchased by Halliday, Taylor instructed his agent who had theretofore collected rents on these lots to cease collecting rents, as Halliday had purchased the lots. There is no evidence in the record of authority in him from Fannie E. Harlan to pay the taxes and collect rents, and he could not bind her by delivering possession of the lots to another claiming to hold a hostile title. Nor did he deliver up possession under any evidence in this record.

Numerous other questions are raised which we deem it unnecessary to discuss, as what we have said disposes of the case.

The court erred in refusing to hold propositions asked by the plaintiff, as also in entering judgment for the defendant and overruling motion for a new trial. The court did not err in holding appellee's tax deed null and void.

The judgment of the circuit court of Alexander county is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*